SO ORDERED.

SIGNED this 22 day of November, 2006.

_____
**J. Rich Leonard**
**United States Bankruptcy Judge**

_____

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE EASTERN DISTRICT OF NORTH CAROLINA
### NEW BERN DIVISION

IN RE:

      ANITA STALLINGS HAWKINS and
      ROBIN BRYAN HAWKINS,

              Debtors.                Case No. 05-05817-8-JRL

      ANITA STALLINGS HAWKINS and
      ROBIN BRYAN HAWKINS,

              Plaintiffs,

vs.

                                       Adversary Proceeding No.:
                                       06-00026-8-AP

      GREEN TREE SERVICING, LLC f/k/a
      CONSECO FINANCE SERVICING CORP.,
      OAKWOOD HOMES CORP., EMERALD COAST
      MORTGAGE CO., and RICHARD CHAPMAN,

              Defendants.

_____

### <u>ORDER</u>

    This matter is before the court on defendant, Green Tree Servicing, LLC 's motion to

dismiss. The court conducted a hearing in Raleigh, North Carolina on November 6, 2006.

## BACKGROUND

The plaintiffs received a life estate in real property by gift deed on April 17, 1998, with the remainder interest vested in their minor children. After their property sustained damage from Hurricane Fran, the plaintiffs contacted Oakwood Homes Corporation ("Oakwood Homes") to purchase a new mobile home. The plaintiffs were told to contact Richard Chapman at Emerald Coast Mortgage Company about mobile home financing. Upon contacting Mr. Chapman, the plaintiffs were informed that the gift deed would have to be modified in order to obtain a loan, because lenders would be unwilling to secure a loan with only a life estate. The plaintiffs contacted an attorney, Charles Henderson, who filed a petition in the Superior Court of Jones County to mortgage lands of a minor and appoint a guardian ad litem to represent the plaintiffs' minor children. On January 12, 1999, an order was issued appointing a guardian ad litem and allowing the mortgage of the minors' interest in real property in the amount of $65,000.

Numax Mortgage provided financing to the plaintiffs for the purchase of their mobile home and it was delivered to them in February of 1999. Mr. Henderson filed a petition with the Superior Court of Jones County to increase the borrowing limit from $65,000 to $72,500 to cover costs associated with the loan closing. The court entered an order approving the increase, and on June 30, 1999, the plaintiffs executed a promissory note in favor of Numax Mortgage ("1999 Note"), secured by a deed of trust on their real property.  Sometime that same year, Numax Mortgage sold the 1999 Note and deed of trust to Conseco Finance Servicing Corp. ("Conseco").

In July 2000, the female plaintiff lost her job due to illness and sought to modify their monthly mortgage payments. On December 12, 2000, the guardian ad litem filed a motion with

2

the Superior Court of Jones County to refinance the minors' interest in real property. The motion

was granted and in January 2001, the plaintiffs executed a new deed of trust and promissory note

in favor of Conseco ("2001 Note"). In December 2002, Conseco, its parents, and its subsidiaries

filed Chapter 11 bankruptcy in the United States Bankruptcy Court for the Northern District of

Illinois, Eastern Division, Case No. 02 B 49672 (jointly administered). As a part of that

bankruptcy, Judge Carol A. Doyle entered an order on March 14, 2003,  allowing Conseco to sell

its mortgage servicing business to CFN Investment Holdings LLC. After that sale, Green Tree

Servicing LLC ("Green Tree") assumed responsibility for servicing the 2001 Note.

In June 2003, the plaintiffs began falling behind on their mortgage payments due to

injury and subsequent loss of employment. In January 2005, the plaintiffs stopped making their

mortgage payments. Green Tree subsequently filed a complaint for equitable lien and judicial

foreclosure regarding the real property and the plaintiffs' mobile home. On July 29, 2005, the

plaintiffs filed a Chapter 13 petition.

## PROCEDURAL HISTORY

On February 2, 2006, the plaintiffs filed a complaint to determine the validity or extent of

Green Tree's secured claim. On April 27, 2006, Green Tree filed a motion to dismiss. The day

before the hearing on Green Tree's motion to dismiss, a motion for leave to amend the complaint

and a motion to appoint a guardian ad litem were filed. The court entered an order on July 11,

2006, finding that in light of the recent pleadings a ruling on the motion to dismiss would be

premature at that time.  The court allowed the plaintiffs to amend their complaint and on August

14, 2006, the plaintiffs filed a Second Amended Complaint. Additionally, a guardian ad litem

has been appointed for the minor children. On September 11, 2006, Green Tree filed this motion

to dismiss and an accompanying memorandum of law.  On October 24, 2006, the plaintiffs responded with their own memorandum of law. Supplemental memorandums of law have been filed by each party.

## STANDARD OF REVIEW

Under Bankruptcy Rule 7012(b)(6) and Federal Rule of Civil Procedure 12(b)(6), a complaint should not be dismissed for failure to state a claim upon which relief can be granted, "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 102 (1957). In making that determination, the court must accept as true all pleaded allegations and view the complaint in the light most favorable to the plaintiffs. Hatfill v. The New York Times Co., 416 F.3d 320, 329 (4th Cir. 2005).

## ANALYSIS

In this case plaintiffs allege six claims of relief: five of those claims are against Green Tree.[1] Green Tree's motion to dismiss asserts that all claims for relief against Green Tree should be dismissed pursuant to Bankruptcy Rule 7012(b) and Rule 12(b)(6) of the Federal Rules of Civil Procedure.

### 1.  Truth in Lending Act ("TILA") and Regulation Z

The plaintiffs' second claim asserts that the 2001 Note and deed of trust underlying Green Tree's proof of claim represent an alleged consumer credit transaction subject to the federal Truth in Lending Act, 15 U.S.C. § 1601 et seq., ("TILA") and Regulation Z thereunder,

---

[1] The first claim for relief is not directed at Green Tree and will not be addressed in this motion.

4

12 C.F.R. § 226. The plaintiffs contend that in the course of this alleged consumer credit transaction, Green Tree and/or the owner and/or holder of the credit transaction failed to properly make all disclosures required by TILA and Regulation Z.

Prior to the hearing on this motion, Green Tree provided copies of the required disclosures pertaining to the 2001 Note. The copies contained the plaintiffs' signatures on both the Truth-in-Lending Disclosure Statement and the HUD-1A for the transaction. Prior to the hearing the plaintiffs did not contest the authenticity of those signatures, and the court finds those documents to be accurate. Additionally, in Conseco's bankruptcy, Judge Carol A. Doyle's order provides that the buyer of Conseco's assets is not " a successor to [Conseco]." Moreover, the order also provides that the Buyer shall not "have any liability to any obligor under any loan or manufactured housing contract (an 'Obligor'), and all such claims of Obligors against the Buyer...shall be barred." Therefore the claim against the Buyer of Conseco's assets (including Green Tree) for Conseco's alleged violation of TILA was purged by Judge Carol A. Doyle's order.

In addition to Judge Carol A. Doyle's order, the claim is barred by the statute of limitations. There are two statutes of limitations applicable to TILA claims. The first allows for an action to be brought within one year from the date of the occurrence of the violation, and the second pertaining to rescission, provides for a three-year period. The 2001 Note was executed around January 2001 and the plaintiffs' original compliant was not filed until February of 2006. Even giving the plaintiffs the benefit of the longer statute of limitation, their claim was not

brought within the required period and is barred.[2]

The court finds that the claim is barred by Judge Doyle's order and by the applicable statute of limitations. Therefore, Green Tree's motion to dismiss claim two is granted.

### 2. Real Estate Settlement Procedures Act ("RESPA")

The plaintiffs' third claim asserts that Green Tree engaged in a pattern or practice of noncompliance with the requirements of 12 U.S.C. § 2601 et seq. ("RESPA"). Specifically, plaintiffs contend that Green Tree violated 12 U.S.C. § 2605(e) by failing to provide a written response acknowledging receipt of plaintiffs' qualified written request within 20 days after receipt of the request. Additionally, plaintiffs contend that Green Tree failed to provide the information and documentation requested or an explanation regarding why the information and/or documentation sought remained unavailable to them. By failing to provide said explanation within 60 days after receipt of the qualified written report, plaintiffs assert that Green Tree violated 12 U.S.C. § 2605(e).

Prior to the hearing on this motion plaintiffs provided a copy of the fax that was allegedly sent by plaintiffs' counsel to Green Tree on September 2, 2004. The fax included a qualified written request for loan documents and referenced a prior fax sent on August 3, 2004, that requested the same documents. In light of this material, at the hearing Green Tree conceded that there was a factual issue of whether the qualified written request was received by Green Tree. Therefore, in viewing the facts most favorable to the plaintiffs, the motion to dismiss the third

---

[2]The court is not persuaded that there is a viable TILA claim against Green Tree on the facts alleged in the complaint. Green Tree was not a party to the 2001 transaction, and thus did not make the disclosure alleged to violate TILA. Its holder-in-due-course immunity would prevent this claim against it as a successor holder of the note unless that immunity were abrogated by HOEPA, which is not alleged here.

6

claim is denied.

### 3.  *Unfair Debt Collection*

The plaintiffs' fourth claim asserts that Green Tree violated the North Carolina Unfair Debt Collection Act, N.C. Gen. Stat. § 75-50 et seq. The court has reviewed the complaint and plaintiffs alleged a number of pertinent facts. One, that Green Tree made purposeful and repeated attempts to collect mortgage payments from plaintiffs. Two, that Green Tree threatened to and did institute a complaint in Jones County Superior Court seeking judicial foreclosure against plaintiffs' land and home. Three, that upon repeated requests made by plaintiffs and plaintiffs' counsel, Green Tree intentionally and willfully failed to verify the validity of the alleged debt.

However, even if the above allegations are true, plaintiffs fail to set forth any facts which would entitle them to relief under the North Carolina Unfair Debt Collection Act. Green Tree's repeated attempts to collect mortgage payments, without more, fail to rise to the level of unfair debt collection. Additionally, threatening to take action that was actually intended to be taken in the case does not violate the statute. N.C. Gen. Stat. § 75-51(7). Lastly, the statute does not require Green Tree to verify or validate a debt before beginning a civil action to collect the debt. See generally N.C. Gen. Stat. §§ 75-51 through 75-55.  Therefore, the plaintiffs failed to allege facts that would entitle them to relief under the North Carolina Unfair Debt Collection Act, and Green Tree's motion to dismiss the fourth claim is granted.

### 4.  *Unfair Trade Practices*

The plaintiffs' fifth claim asserts that Green Tree violated the Unfair Trade Practices Statute, N.C. Gen. Stat. § 75.1 et seq. Plaintiffs contend that Green Tree's actions of repeatedly

attempting to collect under the 2001 Note and deed of trust without validating the instrument or verifying the alleged debt pursuant to plaintiffs' several requests to do so, constitute unfair and deceptive acts and practices in violation of the statute. Additionally, in support of the fifth claim plaintiffs re-alleged and incorporated allegations from the first four claims for relief, which includes the RESPA claim. Plaintiffs assert that an outrageous RESPA violation may support a claim for an unfair trade practice violation. Tomlin v. Dylan Mortgage Inc., 2000 NCBC 9 (N.C.Super.Ct. June 12, 2000) (stating that "if plaintiffs are able to establish a violation of RESPA, they will be able to support an argument that the acts alleged are per se violations of Chapter 75.").

In accepting as true all pleaded allegations, two qualified written requests for loan documents were sent to Green Tree more than two years ago and no responses were received. It was only once litigation was commenced that those documents were finally produced. Such a violation of RESPA may support a claim for violation of the Unfair Trade Practices Statute. Therefore, Green Tree's motion to dismiss the fifth claim is denied.

## 5. *Declaratory and Injunctive Relief*

The plaintiffs' sixth claim is a request for declaratory and injunctive relief. The plaintiffs are attacking the validity and scope of the lien claim. Specifically, the issue involves the question of whether the mobile home is included as collateral for the 2001 Note. The listed collateral only includes a description of the land. The mobile home that sits on that land has a certificate of title and no security interest was noticed on that mobile home at the Department of Motor Vehicles. The North Carolina Supreme Court has not decided in this situation whether the mobile home is included as collateral. Thus, in viewing the facts most favorable to the plaintiffs,

a claim as to the validity and scope of the lien may exist, and the motion to dismiss claim six is denied.

## <u>CONCLUSION</u>

Based on the evidence before the court, Green Tree's motion to dismiss is granted as to claims two and four. Green Tree's motion to dismiss is denied as to claims three, five, and six.

"END OF DOCUMENT"